HERMAN HILFIKER, Respondent, v. J. C. WURGHLER et al., Appellants.

Springfield Court of Appeals, June 12, 1911.  Motion for Rehearing Overruled July 20, 1911.

1. DEBTOR AND CREDITOR: Payment to Third Person. Where payment is made to a third person by the request or with the consent of the creditor, or where the original agreement is to pay a third person for the creditor, such payment is as valid in law as though made directly to the creditor.

2. ———: ———: Discharge of Obligation. Where a purchaser of real estate pays the purchase price to a third party and

this payment is made by agreement with the owner the obligations of the purchaser are fully discharged, and his rights are not effected even though the party to whom the purchase money was paid refuses to pay the same over to the owner of the land.

3. ——: ——: Voluntary Payment by Another: Money Had and Received. Plaintiff purchased land from defendant W., and the other defendants had an interest in the land. By consent of all the parties the payment for the land was made to defendant H., and a disagreement arose between defendant W. and the other defendants, as to how much of the purchase price W. was entitled to receive. Whereupon W. brought suit against plaintiff for a balance claimed to be due him on the purchase price, and notified plaintiff's mother of his claim, and the mother paid W. the sum demanded. Plaintiff brings this suit for a return to him of that part of the purchase money which he claims should have been paid to W. and which was covered by the money paid by the plaintiff's mother to W. *Held* that plaintiff could not recover for the reason that he had no further interest in the purchase money after it had been paid to H. by agreement of all the parties, and no right to any part of W.'s share therein and that the voluntary payment made by plaintiff's mother was a mere gratuity and did not change the rights of the parties.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED.

*M. E. Morrow* and *H. D. Green* for appellants.

The construction of a contract is a question of law for the court and not an issue of fact for a jury. Rogers v. Modern Brotherhood, 131 Mo. App. 353; State to use v. Donnelly, 9 Mo. App. 520; Lumber Co. v. Warner, 93 Mo. 374; Chapman v. Railroad, 114 Mo. 542; Matthews v. Danahy, 26 Mo. App. 660. (2) The doctrine of subrogation only applies when the person claiming its benefits has been compelled to pay the debt of a third party in order to protect his own rights or save his own property. Bunn v. Lindsay, 95 Mo. 250; Sheldon on Subrogation, secs. 3, 240, 278; Wade v. Baldwin, 40 Mo. 486; Wooldridge v. Scott, 69 Mo. 669; Sharp v. Collins,

74 Mo. 266; Price v. O'Reily, 116 Mo. 346; Stearns v. Godfrey, 16 Mo. 158; Small v. Stagg, 95 Ill. 39; Barber v. Lyon, 15 Ia. 37; Grady v. O'Grady, 116 Mo. 346; Suddath v. Gallagher, 126 Mo. 393. (3) The payment of the money to Wurghler by plaintiff's mother was the result of her own and plaintiff's negligence, from which these defendants tried to protect them. Court will not relieve a party against the result of ones own negligence. Brown v. Fagan, 71 Mo. 563; Sheldon on Subrogation, sec. 43; Connor v. Welch, 51 Wis. 431; 1 Story on Eq. Jur. (6 Ed.), sec. 146.

*J. N. Burroughs* for respondent.

(1) Subrogation has no place in this action. This is purely an action for money had and received. An action on the common count for money had and received by defendant for the use of plaintiff, lies because the defendants received money of the plaintiff which in equity and good conscience they ought to pay him. Richardson v. Drug Co., 92 Mo. App. 515. (2) A petition is held to state an action for money had and received where it was alleged that one received money for the use of another and neglected to turn it over on demand, and it is immaterial how the money came into defendant's hands. York v. Bank, 105 Mo. App. 127. (3) It is not necessary to allege a promise to pay, nor is privity of contract required. The law implies privity. Tamm v. Kellogg, 49 Mo. 118. (4) An action for money had and received will lie whenever one person has received money which in justice and right belongs to another. And it is not necessary that there should be an express promise as the law implies a promise. Banking Co. v. Commission Co., 195 Mo. 288.

NIXON, P. J.—This was an action for money had and received brought by the respondent in the circuit court of Howell county where upon trial before a jury he obtained judgment for the sum of $354.25. The de-

fendants have appealed. At the trial, the plaintiff dismissed all the counts of his petition except the first which is as follows: (Caption omitted.)

"Plaintiff for his amended petition states that the defendant, Anglo-Swiss Colony Company, is a corporation organized and doing business under the laws of the state of Misouri.

"Plaintiff further states that on the —— day of ——, 1908, the defendant, J. C. Wurghler, held possession of the W. ½ of the N. W. ¼ of section 22, township 23, range 7, of Howell county, Missouri, and had a contract of purchase of said land from the other defendants, who held the title thereto, and the last named defendants had a balance due them on said land from said Wurghler.

"Plaintiff states that on said date he entered into a contract with defendants to purchase said land at a total price of $1575; that it was mutually agreed and understood between defendants that the money to be paid by plaintiff should pass through the hands of said Haight and the said Colony Company, who held the legal title, and that after satisfying their claim of $1000 principal and $80 interest the remainder would belong to said Wurghler.

"Plaintiff further states that on the —— day of ——, 1908, there was paid to said Haight and the said Colony Company, through the First National Bank of West Plains, the full and entire sum of $1575 for this plaintiff, being the full purchase price of said land; that the said Haight and the Colony Company retained the whole of said sum of $1575, less $106 paid to W. J. Zorn for said Wurghler; that the balance going to said Wurghler was $389, which Haight and the Colony Company wrongfully withheld from him, but had been paid to them by plaintiff; that thereupon said Wurghler filed suit against the plaintiff in the circuit court of Howell county, and plaintiff sought to reach a settlement of said suit by importuning Haight and the Colony

Company to pay over to Wurghler his just portion, which they refused, and also refused to turn the same back to plaintiff, and said defendants still wrongfully detain said sum; that subsequent to the filing of said suit the said sum of $389 was paid to said Wurghler for plaintiff by his mother; that demand has been made on Haight and the Colony Company for a return of said money, which has been refused.

"Wherefore, plaintiff prays judgment against the defendants in the sum of $389 with costs of this suit."

To this count of the petition the defendants filed a demurrer which was overruled, and thereafter defendants filed an answer in the nature of a general denial.

The facts developed at the trial were in substance as follows: The Anglo-Swiss Colony Company owned a tract of land comprising several thousand acres in Howell county near the town of Brandsville, and claimed to be carrying on a scheme of colonization by inducing Swiss people to purchase small tracts of this land and immigrate to this country for the purpose of settling and developing the same. In the year 1906, the defendant Wurghler, then a resident of Switzerland, bought of the Anglo-Swiss Colony Company a certain tract of this land near Brandsville, his contract of purchase containing, among other things, the following:

"Anglo-Swiss Colony Co. hereby acknowledges receipt of $200 by Dr. Frey to apply on 80 acres of land contracted for by J. C. Wurghler, i. e., the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of sec. 22, T. 23, R. 7, Howell county, Mo.

"$200 due Apr. 1, 1907, $400 due Jan. 1, 1908, and $400 due Jan. 1, 1909, int. 4 per cent."

As shown by this contract, Wurghler paid $200 on the land, but he made no further payments. The Colony Company had not executed a deed to him, but he was in possession of the land under his contract and had made some improvements thereon at the time plaintiff's interest in the land arose. Wurghler's contract of pur-

157 App.—26

chase contained the following clause as to forfeiture: "When the different payments are not punctually made or the clearing of the ground not begun and actual settlement made, the company can take the land back upon refunding one-half of the payments actually made, whereupon this contract shall be null and void." The company, however, at no time had taken any steps to declare a forfeiture under this clause in the contract. On November 2, 1908, Wurghler sold the land to plaintiff. At the time of this sale, W. R. Haight was the agent of and was acting for the Colony Company in the transaction between plaintiff and Wurghler. In this deal, some personal property went in, the total price for the land and personal property being $1775, of which $200 was to be paid in cash, leaving a balance of $1575. The contract or bill of sale from Wurghler to plaintiff was as follows:

BRANDSVILLE, MO., Nov. 2, 1908.

"Memorandum of agreement between J. C. Wurghler and Herman Hilfiker, for the sum of $1775 ($200 in hand paid and balance to be paid within three months) said Wurghler agrees to sell and said Hilfiker agrees to purchase the following, to-wit:

"All interest of said Wurghler in 80 acres of land, being the W. ½ of the N. W. ¼ of Sec. 22, T. 23, R. 7, Howell county, Mo.; 1 blue horse, 1 buggy, 1 spring-wagon, 2 sets harness, 2 cows, 1 calf. 1 hog, all chickens, 1 tent, all loose wire, all farming implements, all tools (except watch making tools) 1 bed, 6 chairs, 2 tables, cooking implements to be agreed upon, all crops on hand.

"It is understood that out of the above consideration the balance owing on land is to be paid by said Herman Hilfiker.

(Signed)                    "J. C. WURGHLER,
                            "HERMAN HILFIKER."

At the trial the plaintiff testified that the payment for the land, by agreement between him and Wurghler,

was to be made to Haight as the agent of the Colony Company. "Q. Was there any conversation between Haight and Wurghler there about whose hands this money would pass through? A. Yes, sir. Mr. Haight claimed it had to go through the company's hands in order to be sure and get the money out of Wurghler. He (Haight) would pay Wurghler and settle with him. Q. Was that money paid over to Haight from you, the full $1575? A. I paid it to the First National Bank for both of them, Haight and Wurghler."

In Wurghler's deposition for plaintiff he testified: "When I made that contract with Herman Hilfiker (referring to the contract for the sale of his land to the plaintiff) Haight would have that all the money be turned over to the company, and at first I refused, then Mr. Haight promised me that I get my money first, before they keep theirs, and finally I consented. Q. You mean that you consented that Herman Hilfiker pay this $1575 to the Colony Company, with the understanding that you and the company would adjust the matter? A. That the company would pay me first."

Plaintiff deposited the sum of $1575 in the First National Bank to the use of the defendants, according to the agreement, and the Colony Company delivered to the plaintiff a deed to the land purchased by him. The whole sum was turned over to Haight, according to agreement. After the money had been paid to the bank, Wurghler, with the consent of the Colony Company, checked out to pay some of his bills—$106 to Zorn and $50 to Thoman. Afterwards, Haight and Wurghler undertook to settle their matters. They disagreed as to the balance that was due Wurghler. Wurghler claimed he only owed the Colony Company $1000 principal and $80 as interest. Haight then tendered Wurghler a check for $269 claiming the company owed him nothing and that it was offered to get him out of the country, but Wurghler refused to accept the same and brought suit against the plaintiff, Hilfiker. During the pendency of

that action, Wurghler obtained $700 from plaintiff's mother and his administrator residing in Switzerland through representations that plaintiff had failed and refused to pay him for the land. This payment of $700 was made for plaintiff, but under his protest. The calculations made by the jury upon which they based their verdict were that plaintiff paid $1575 for the land; that $1080 of that amount was due the Colony Company; that $106 was paid to Zorn and $50 paid to Thoman on the order of Wurghler with the consent of the Colony Company. The balance, $339, with interest thereon, was found by the jury to be due the plaintiff.

As we have seen, by agreement of all the parties, the purchase price of the land bought by plaintiff from Wurghler—$1575—was to be paid by plaintiff to the Colony Company, and Wurghler and the Colony Company were to settle among themselves, and that, under this agreement, by consent of all the parties, plaintiff's payment of $1575 was made to the Colony Company or to Haight as its agent. Where payment is made to a third person by the request or with the consent of the creditor, or where the original agreement is to pay a third person for the creditor, such payment is as valid in law as though made directly to the party in interest. [30 Cyc. 1183.] When the payment was made by the plaintiff according to agreement, his obligations under his contract of purchase were fully discharged. Neither Wurghler, Haight, nor the Colony Company breached any contract with the plaintiff by reason of the failure to settle among themselves. Plaintiff received the land with the title contracted for and took posession in pursuance of his contract; he paid the amount of his purchase price in the manner and at the time agreed upon and no one had disturbed his title or possession. After the payment of the money to Haight or the Colony Company with the consent of Wurghler, plaintiff had no further interest in the money. It became absolutely the property of Wurghler and the Colony Company and

plaintiff had no further right to direct its disposition. The plaintiff assumed no further obligation to Wurghler, either express or implied, in law or in equity, that Haight or the Colony Company would pay Wurghler the amount due him. Their settlement then became matter exclusively of their own personal concern in which the plaintiff had no interest. Nor would the fact that Wurghler commenced a baseless suit against the plaintiff for the money due him from Haight or the Colony Company, nor the further fact that plaintiff's mother or his administrator voluntarily settled the same with or without his consent, in any way change the situation, as such suit was without merit and such payment under the circumstances was a mere gratuity. Whatever plaintiff may have lost, if anything, by the machinations of Wurghler was due to his own misfortune or folly for which he can obtain no relief in the present action. It follows that appellants' motion in arrest of judgment should have been sustained. The judgment is accordingly reversed. All concur.